IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARMELITO OLAES, | ) | CASE NO. 1:08 CV 2973 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| CITY OF CLEVELAND, *et al.*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -2-
    A.    The arrest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -3-
    B.    Municipal court case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -7-
    C.    Olaes' federal action  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -8-
    D.    Motion for partial summary judgment . . . . . . . . . . . . . . . . . . . . .   -10-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -11-
    A.    Standard of review – summary judgment . . . . . . . . . . . . . . . . . .   -11-
    B.    Application of standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -14-
        1.    Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -14-
        2.    Ohio statutory immunity . . . . . . . . . . . . . . . . . . . . . . . . .   -15-
        3.    Probable cause  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -19-
            a.    Standard of review . . . . . . . . . . . . . . . . . . . . . . . . .   -19-
            b.    Petranek and Guerra are entitled to summary judgment on the issue of whether the arrest of Olaes was supported by probable cause. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -21-
        4.    Failure to train  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -27-
            a.    Standard of review . . . . . . . . . . . . . . . . . . . . . . . . .   -27-
            b.    The City of Cleveland is entitled to summary judgment on the claim in count four that it failed to provide adequate police training. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -30-
        5.    Malicious prosecution . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -31-
        6.    Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -35-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   -37-

## Introduction

Before me by referral[1] is a motion by defendants the City of Cleveland and two Cleveland police officers[2] for partial summary judgment[3] in this case asserting federal and state law claims[4] arising out of the 2007 arrest of plaintiff Carmelito Olaes.  The Court has jurisdiction over the federal claims under 28 U.S.C. § 1331, with supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367.  Olaes has responded in opposition to the motion,[5] to which the defendants have replied.[6]  For the reasons that follow, I will recommend that the defendants' motions for partial summary judgment be granted.

## Facts

The facts relevant to the motion for partial summary judgment will be briefly stated here, with more detailed exposition to follow in the analysis of the motion.

---

[1] ECF # 25.

[2] The named defendants are the City of Cleveland and Cleveland police officers Patrick J. Petranek and Tim Guerra.  ECF # 1.

[3] ECF # 17.

[4] ECF # 1.

[5] ECF # 19.

[6] ECF # 21.

A.      **The arrest**

There is no dispute that this case arose out of events that took place within a short span of time[7] in downtown Cleveland during the late night to early morning hours of December 20-21, 2007.  While both versions of the relevant facts related by the parties are substantially similar,[8] there are some differences.  In those instances, the accounts of each party will be presented.

Initially, events were set in motion when Olaes and his friend Jeff Concepcion were returning home from a Cavaliers' game and came across Kristen Perdue in Gateway's North Garage.[9]  Appearing distraught, Perdue told Olaes and Concepcion that her car had been stolen and that she had become separated from her boyfriend Robert McCrimmon, who had been assaulted.[10]  After calling 911 to request police assistance at the garage, Concepcion went outside to look for help, while Olaes and Perdue remained inside, and began to search for Perdue's car and for McCrimmon.[11]

---

[7] *See*, ECF # 19 at 11 (presenting a time line).

[8] The parties each present a significant amount of facts not relevant to the present motion which are not related here.

[9] ECF # 17 (defendants) at 3; ECF # 19 (Olaes) at 4.  Citations to the record in the briefs are omitted.

[10] *Id*.

[11] *Id*.

Having no success in any of their efforts, the three came back together, called 911 a second time, and decided to wait for police at a nearby bar, the Harry Buffalo.[12]  At the bar, Olaes remained outside to watch for the police, while Perdue and Concepcion went inside, where they discovered McCrimmon.[13] It was while standing outside the bar that Olaes flagged down a passing zone car on East 4th Street containing defendant officers Petranek and Guerra.[14]

Olaes told the officers that police assistance was needed.[15]  While the police car was being turned around so that the officers could respond to Olaes, Petranek and Guerra received a high-priority assignment call from the police dispatcher indicating that an abduction/kidnapping was apparently occurring two blocks from their location.[16]  Unknown to the officers at the time, this dispatch was the result of the 911 calls made previously by Olaes and Concepcion.[17]

When the police officers had finally positioned their car in front of the Harry Buffalo, Concepcion emerged from the bar heading for Olaes and the police car talking on his cell

---

[12] *Id*.

[13] *Id*.

[14] ECF # 17 at 2, 3; ECF # 19 at 4.

[15] ECF # 17 at 2, ECF # 19 at 5.

[16] ECF # 17 at 3.

[17] *Id*.

phone.[18]  Concepcion was speaking with the police dispatcher about the 911 call that he

placed earlier.[19]  After a brief exchange that ended with Concepcion calling the officers'

conduct "rude," Petranek told Concepcion to bring Perdue, who was still in the bar, outside

to the police.[20]  Accordingly, Concepcion headed back into the bar, while Olaes – who had

not been involved in the conversation to this point – came up near the window of the police

car.[21]

   At this point, the officers maintain that Olaes was "intoxicated, screaming, flailing his

arms, and not complying with the officers' instructions."[22]  Olaes, by contrast, insists that,

although he and Concepcion had consumed two drinks that evening, he was not intoxicated.[23]

While the officers state that Olaes at that moment was upset, believing that the officers were

preparing to leave without speaking to Perdue,[24] Olaes relates that his concern then was that

"the officers were just there [in the police car] with the windows open" and not pursuing an

---

[18] ECF # 19 at 5.

[19] *Id*.

[20] ECF # 17 at 4.

[21] *Id*.; ECF # 19 at 6.

[22] ECF # 17 at 4.  The report by Lt. Kane, the officer who would later arrive at the scene to investigate, states that Olaes became agitated at seeing the police officers turning their car around because he assumed they were leaving without making any investigation. *See*, ECF # 19, Attachment 1 at 1.

[23] ECF # 19, Ex. 2 (Petranek field report).

[24] ECF # 19 at 3-4.

investigation.[25]  The officers state that their decision to remain in their zone car and not go

inside to talk with Perdue was so they could listen to the dispatch radio since they remained

unclear as to whether the report of an apparent abduction two blocks away was the same

incident as the one for which Olaes and Concepcion sought assistance.[26]

Standing near the open window of the police car, Olaes was told by Petranek to back

away.[27]  Olaes continued trying to get the officers to come out of the car to investigate:

> Why don't you come down and take a look?  I mean, we've been with her the
> whole time.  We're just, she's upset, and we're with her, and why don't you
> see what's happening ... that's your job ... that's your job to help out.[28]

Petranek then reacted to these comments by telling Guerra, "I have had enough of

him."[29]  To that end, Petranek rapidly came out of the police car, grabbed Olaes,[30] who is by

his own description "a dark-skinned Oriental person,"[31] "slammed" him on the hood of the

car[32] saying, "Don't tell me what the fuck to do.  Don't you ever tell me what the fuck to

---

[25] ECF # 18, Ex. 1 (Olaes deposition) at 52.

[26] ECF # 17 at 4-5.

[27] *Id*. at 5.

[28] *Id.*; ECF # 18, Ex. 1 (Olaes deposition) at 52.

[29] ECF # 19 at 7.

[30] Petranek states that he exited his vehicle to issue a ticket to Olaes and grabbed him only when Olaes refused to approach the officer to receive the ticket.  ECF # 17 at 5 n.26.

[31] ECF # 19 at 7.

[32] *Id.* at 8.

do."[33]  Likewise, Officer Guerra also exited the car, executed a "front-facing leg sweep"[34]

that caused Olaes to "hit the ground face first with great force,"[35] while saying:

> Don't tell us what the fuck to do again you fucking asshole.  You're not even
> from this country, you fucking Chink."[36]

The officers then handcuffed Olaes and placed him in the back of the police car.[37]

After a police supervisor arrived at the scene to begin an investigation into the use of force,

Olaes was taken to jail.[38]  Olaes remained in jail overnight.[39]

**B.      Municipal court case**

Based on two misdemeanor complaints filed by police against Olaes for resisting

arrest and aggravated disorderly conduct intoxicated,[40] Olaes was charged with resisting

arrest and aggravated disorderly conduct intoxicated.[41]  An assistant Cleveland prosecutor

---

[33] ECF # 17 at 5.

[34] ECF # 19 at 8.

[35] *Id*.  The defendants admit that Olaes was "taken to the ground" but otherwise dispute Olaes' account of the circumstances.  ECF # 17 at 5 n.29.

[36] ECF # 19 at 7.

[37] *Id*. at 8; ECF # 17 at 5.

[38] ECF # 17 at 6; *see also*, ECF # 9 (amended complaint) at ¶¶ 31-37.

[39] ECF # 9 at ¶ 38.

[40] *See*, ECF # 17, Attachment (Perez declaration), Exs. 1 and 2.

[41] *Id*.

states that she reviewed the entire file – the complaint, the officer's field report, and four witness statements – for probable cause prior to recommending prosecution.[42]

At trial, following the conclusion of the prosecution's case, a directed verdict of acquittal was entered.[43]  In that regard, the municipal court found that, while Olaes could have handled his interaction with police in a better way, his conduct did not constitute aggravated disorderly conduct intoxicated as a matter of law and thus did not provide probable cause for his arrest.[44]  The court further noted that, while it ultimately concluded that no probable cause existed for the arrest, the arrest was nevertheless made in good faith because the officers felt "[Olaes] had gotten to the point where his conduct might escalate."[45]

## C.    Olaes' federal action

Olaes filed the present suit in December 2008.[46]  In the amended complaint,[47] he raises the following claims:

> 1.    That under 42 U.S.C. § 1983 Petranek and Guerra violated Olaes' federally protected civil rights by arresting him without probable cause;[48]

---

[42] ECF # 17, Attachment (Villa declaration).

[43] ECF # 17 at 7.

[44] *Id*.

[45] *Id*.

[46] ECF # 1.

[47] ECF # 9.

[48] *Id.* at ¶¶ 45-47.

-8-

2.       That under 42 U.S.C. § 1983 Petranek and Guerra violated Olaes' federally protected civil rights by using excessive force against him;[49]

3.       That under 42 U.S.C. § 1983 Petranek and Guerra violated Olaes' federally protected civil rights by instituting a malicious prosecution against him.[50]

4.       That under 42 U.S.C. § 1983 the City of Cleveland violated Olaes' federally protected civil rights by failing to train its police officers.[51]

5.       That under 42 U.S.C. § 1983 Petranek was objectively unreasonable, acting with malicious purpose and bad faith in his actions against Olaes, and so is personally, not just professionally liable.[52]

6.       That under 42 U.S.C. § 1983 Guerra was objectively unreasonable, acting with malicious purpose and in bad faith in his actions against Olaes, and so is personally, not just professionally liable.[53]

7.       That under state law, because Olaes was arrested without probable cause, Petranek and Guerra are liable for making a false arrest.[54]

8.       That under state law, because Olaes was detained by excessive force, Petranek and Guerra committed assault and battery.[55]

9.       That under state law, Petranek and Guerra falsely imprisoned and detained Olaes.[56]

---

[49] *Id.* at ¶¶ 49-51.

[50] *Id.* at ¶¶ 53-55.

[51] *Id.* at ¶¶ 57-58.

[52] *Id.* at ¶¶ 60-63.

[53] *Id.* at ¶¶ 65-68.

[54] *Id.* at ¶ 70.

[55] *Id.* at ¶ 72.

[56] *Id.* at ¶ 74.

10.     That under state law, Petranek and Guerra maliciously prosecuted Olaes.[57]

In his amended complaint, Olaes seeks compensatory damages for physical injury suffered in the alleged use of excessive force, and in his subsequent imprisonment, as well as for mental anguish, post-traumatic stress, and for his attorneys fees.[58] He also seeks punitive damages.[59]

## D.     Motion for partial summary judgment

In the motion for partial summary judgment, the defendants seek judgment in their favor as to counts one (federal – lack of probable cause), three (federal – malicious prosecution), four (federal – failure to train), seven (state – lack of probable cause), nine (state – false imprisonment), and ten (state – malicious prosecution).[60] The defendants also seek summary judgment as to Olaes' damage claim insofar as it seeks recovery of lost income related to a business deal that purportedly did not happen because Olaes was suffering from the effects of these actions.[61]

The defendants have made no motion as to counts two (federal – excessive force), five (federal– malice/bad faith as to Petranek), six (federal – malice/bad faith as to Guerra), or eight (state – excessive force, assault and battery).

---

[57] *Id*. at ¶ 76.

[58] *Id*. at ¶ 78.

[59] *Id*.

[60] ECF # 17 at 1.

[61] *Id*. at 19-20.

-10-

## Analysis

**A.      Standard of review – summary judgment**

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[62]  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[63]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[64] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[65]  The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[66]

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.[67]  Accordingly, "[t]he mere existence of

---

[62] Fed. R. Civ. P. 56(c).

[63] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[64] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[65] *Id.* at 252.

[66] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[67] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir.2005) (citing *Celotex*, 477 U.S. at 322).

-11-

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[68] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[69]

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[70]  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[71]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[72]  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[73]  The text of Fed. R. Civ. P. 56(e) states:

---

[68] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir.2004) (quoting *Anderson*, 477 U.S. at 248-49).

[69] *Anderson*, 477 U.S. at 249-50 (citation omitted).

[70] *Id.* at 252.

[71] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

[72] *Anderson*, 477 U.S. at 256.

[73] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

-12-

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[74]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"[75] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[76]

However, the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

---

[74] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[75] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

[76] *Id.* at 225-26 (citations omitted).

If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[77]

As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[78] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[79] The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[80]

In sum, proper summary judgment analysis entails:

the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[81]

**B.    Application of standard**

*1.    Overview*

The various claims here involve both state and federal law, as applied to individual defendants and to a municipal defendant.  Moreover, not all claims asserted by Olaes are

---

[77] *Id.* at 226 (citations omitted).

[78] *Anderson*, 477 U.S. at 248.

[79] *Id.* at 249.

[80] *Id.*

[81] *Id.* at 250.

involved in the motion for partial summary judgment.  The claims at issue in this motion, however, appear to center on three major issues:  (a) the probable cause for the arrest, (b) failure to train, and (c) malicious prosecution.  I will, therefore, address each of these issues in turn and then apply that discussion more specifically to the particular claims and defendants applicable to that analysis.  Finally, I will consider the motion as relates to Olaes' claim for damages purportedly arising from the loss of income from an unconsummated business deal.

## 2.    *Ohio statutory immunity*

Because state statutory immunity defenses have been raised, I will initially address the application of that concept in this case before discussing the issues as described above. First, as to the City of Cleveland, the Ohio Supreme Court has noted in *Wilson v. Stark County Department of Human Services*, "[p]olitical subdivisions are shielded from civil liability as provided by R[evised] C[ode] Chapter 2744.  [That chapter] creates a broad immunity, subject [only] to certain enumerated exceptions."[82]  While in that section there are exceptions to the immunity of political subdivisions for injuries caused by the negligent acts of employees performing proprietary functions, "[t]here is, however, no such general exception for governmental functions."[83]  The rule of interpretation in Ohio for this grant of

---

[82] *Wilson v. Stark County Dep't of Human Servs.*, 70 Ohio St. 3d 450, 452, 639 N.E.2d 105, 107 (1994).

[83] *Id.*

immunity to the political subdivision itself is that "[i]f none of the exceptions to immunity apply, the political subdivision is immune from suit."[84]

Here, there is no dispute that providing police protection is regarded by Ohio statute as being a "governmental function" of a political subdivision.[85]  Similarly, Ohio recognizes that the prosecutorial function is also a "governmental function" of a political subdivision under the sovereign immunity statute.[86]  Thus, I recommend finding that the City of Cleveland, as a political subdivision, is immune under Ohio law for the acts of any of its employees in arresting Olaes or pursuing his prosecution.[87]

As to individual employees of a political subdivision, Ohio Revised Code § 2744.03(A)(6) provides:

> (A)  In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to a person or property allegedly caused by an act or omission in connection with a government or proprietary function, the following defenses or immunities may be used to establish non-liability:
>
> (1)
>
> .....

---

[84] *Wynn v. Butler County Sheriff's Dept.*, 1999 WL 160942, at *2 (Ohio Ct. App. March 22, 1999).

[85] Ohio Rev. Code § 2744.01(C)(2)(a).

[86] Ohio Rev. Code § 2744.01(C)(2)(f).

[87] Only one count of the complaint, count four (federal – failure to train) is expressly pled against the City.  But for purposes of completeness, the City does have statutory immunity for any liability on state law claims arising from the conduct of its employees Petranek and Guerra.

(6)  In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.25 of the Revised Code, the employee is immune from liability unless one of the following applies:

(a)  The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b)  The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner.

Here, there is no dispute that the named individual defendants – Petranek and Guerra – were each acting within the scope of his employment as a Cleveland police officer at the time of the incident in question and so were performing a governmental function under Ohio law, either by providing police protection or by supporting the prosecution of crimes.  Thus, the only remaining issue as to determining Petranek and Guerra are individually entitled to state statutory immunity is whether, in doing these acts, they individually acted with a malicious purpose, in bad faith, or recklessly.[88]

The officers here assert that, because the municipal court concluded they were acting in good faith when they arrested Olaes, "on that basis alone," they should be entitled to state statutory immunity.[89]  In that regard, the defendants appear to be arguing, without citation to authority, that this statement by the municipal court that the officers acted in good faith somehow precludes consideration of that question in this suit.

---

[88] I observe that Olaes has not claimed that Ohio's entire grant of sovereign immunity is unconstitutional.  This Court in *Williams v. City of Cleveland*, 2009 WL 2151778, at *3 (N.D. Ohio July 16, 2009) (Polster, J.) has previously rejected such a claim.

[89] ECF # 17 at 14.

As is well-established, however, Ohio's doctrine of issue preclusion, or collateral estoppel, only bars the re-litigation of a question where that point "'was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction ....'"[90] Here, because the municipal court case was dismissed prior to the defense presenting its case on the grounds that Olaes' conduct as a matter of law did not constitute the offense for which he had been arrested, the municipal court never reached – let alone passed upon and determined – the issue of whether the officers' actions in arresting Olaes were done maliciously or in good faith.

Accordingly, I recommend finding that the comment of the municipal court opining that the officers acted in good faith is not entitled under Ohio law to any preclusive effect in this matter.

Addressing the statutory immunity issue, then, without considering the municipal court decision, I note initially that the defendants are not seeking summary judgment as to count eight of the complaint – the state law question of whether excessive force was employed in making the arrest.  Thus, this issue has not been briefed by the parties and is not now before the Court.  Accordingly, I recommend no finding as to whether Petranek and Guerra are entitled to statutory immunity for the claim in count eight.

As concerns count seven, the state law claim that Petranek and Guerra falsely arrested Olaes, and count nine, the Ohio law claim that Petranek and Guerra falsely imprisoned and

---

[90] *Knott v. Sullivan*, 418 F.3d 561, 567-68 (6th Cir. 2005) (quoting *Boone v. Spurgess*, 385 F.3d 923, 927 n.4 (6th Cir. 2004)) (quoting *State ex rel. Stacy v. Batavia Local School District Bd. of Educ.*, 97 Ohio St. 3d 269, 272, 779 N.E.2d 216, 219 (2002)).

detained Olaes, I will recommend in a subsequent portion of this report that the Court find that probable cause existed for the arrest of Olaes.  If this recommendation is adopted, it will, as a matter of law, defeat the Ohio law false arrest claim of count seven, thus entitling Petranek and Guerra to summary judgment in their favor as to this claim.[91]

I further recommend that Petranek and Guerra receive summary judgment as to count nine – false imprisonment.  As a matter of Ohio law, false imprisonment, unlike false arrest, involves purely the actions of private parties where there is no intention of bringing the detained person before a court or otherwise securing the administration of the law.[92]

### 3.    *Probable cause*

*a.    Standard of review*

The law is plain that an arrest made without probable cause violates the Fourth Amendment and is actionable under 42 U.S.C. § 1983.[93]  For a police officer to have probable cause for an arrest there must be "facts and circumstances within the officer's knowledge sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to

_____

[91] *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 315 (6th Cir. 2005).  "[A]n arrest based on probable cause is a lawful detention and, thereby, serves to defeat a false arrest/imprisonment claim [under Ohio law]."  *See also*, *Michael v. Highland County Sheriff's Dep't*, 2005 WL 2176947, at *5 (S.D. Ohio Sept. 1, 2005).  When federal claim of lack of probable cause for arrest fails, state law claim of false arrest must fail since "[t]here is no false arrest when such arrest is based on probable cause."

[92] *Nerswick v. CSX Transp.*, 692 F. Supp. 2d 866, 882 (S.D. Ohio, 2010) (citing *Rogers v. Barbera*, 170 Ohio St. 241, 243, 164 N.E.2d 162, 164 (1960)).

[93] *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000).

commit a crime."[94]  Thus, probable cause "requires only the probability of criminal activity, not some kind of 'prima facie' showing of such activity."[95]

Probable cause is assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[96]  Accordingly, a determination of probable cause "involve[s] an examination of all facts and circumstances within an officer's knowledge at the time of arrest."[97]  This standard is purely objective and depends solely "upon the reasonable conclusion to be drawn from the facts known by the arresting officer at the time of the arrest."[98]  Thus, an officer's "subjective  reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."[99]

In that regard, the offense establishing probable cause for an arrest need not be "closely related to," or based on, the reason for the arrest given by the arresting officer at the time.[100]  As noted by the court in *Alman v. Reed*,[101] "probable cause to believe that a person

---

[94] *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *accord*, *Donovan v. Thames*, 105 F.3d 291, 298 (6th Cir. 1997).

[95] *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988).

[96] *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).

[97] *Gardenhire*, 205 F.3d at 315 (internal citations omitted).

[98] *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

[99] *Id*.

[100] *Id*. at 153-54; *United States v. Abdi*, 463 F.3d 547, 559 (6th Cir. 2006).

[101] *Alman v. Reed*, 2010 WL 4106686 (E.D. Mich. Oct. 7, 2010).

-20-

has committed *any* crime will preclude an unlawful arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause."[102]

Further, while an officer who has established probable cause to arrest is under no duty to investigate further in search of evidence that may exculpate the accused,[103] an officer, in initially determining probable cause, "cannot only look at evidence of guilt while ignoring all exculpatory evidence.  Rather, an officer must consider the totality of circumstances, recognizing both the inculpatory *and* exculpatory evidence, before determining if he has probable cause to make an arrest."

b.    *Petranek and Guerra are entitled to summary judgment on the issue of whether the arrest of Olaes was supported by probable cause.*

I note initially that the municipal court's dismissal of the charges against Olaes as a matter of law is not determinative of the claim in this action that his arrest was without probable cause.  As the parties here all concede, the validity of Olaes' arrest does not depend on whether the charges against him were later dismissed.[104]  Rather, as noted, the test here is whether, under the totality of the circumstances within the officers' knowledge at the time of the arrest, there were facts that would lead a prudent person to believe that Olaes was committing or was about to commit a crime.

---

[102] *Id.*, at *15 (citations omitted) (emphasis in original).

[103] *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999).

[104] *See*, *DeFillippo*, 443 U.S. at 36.

I note further, as outlined above, that the question of whether the totality of the circumstances provided probable cause for the arrest is broader than whether probable cause existed to specifically arrest Olaes on charges of aggravated disorderly conduct and resisting arrest.[105]  In that regard, the defendants here argue that because Olaes was "standing by the open window of the police car berating the officers," thereby keeping Petranek and Guerra from listening to the police radio concerning the dispatch to which they were responding, there was probable cause for arresting him for obstructing official business.[106]  In response, Olaes acknowledges that he came up to the patrol car to tell police they were not doing their job and to say they should get out of the car to investigate but argues that this "hardly amount[s] to any interference ... with respect to the official investigation."[107]  Moreover, he claims that there was no need for officers to be listening to the dispatcher regarding any confusion about the 911 call since Concepcion had already told police "they were the ones police were looking for ...."[108]

Applying the above-stated standard to this matter, and viewing the evidence in the light most favorable to Olaes, I recommend granting summary judgment to Petranek and Guerra on the issue of whether the arrest here was supported by probable cause.  Specifically, I recommend finding that no questions of material fact exist as to whether, considering both

---

[105] *See*, ECF # 19, Attachment 2 (Petranek field report).

[106] ECF # 17 at 16.

[107] ECF # 19 at 23.

[108] *Id*.

-22-

exculpating and inculpating evidence,  there were facts known to the officers at the time from which a prudent person could believe that Olaes was committing or was about to commit the offense of obstructing official business.

I note initially that the offense of obstructing official business is set forth in the ordinances of Cleveland as follows:

615.06   Obstructing Official Business

(a)     No person, without privilege to do so and with purpose to prevent, obstruct or delay the performance by a public official of any authorized act within his official capacity, shall do any act that hampers or impedes a public official in the performance of his lawful duties.[109]

Here, the uncontroverted facts establish that the original 911 call to which Petranek and Guerra were responding was that there was a police emergency at the North Gateway garage.  When the officers approached that location, they were flagged down by Olaes and Concepcion on the street outside of a nearby bar seeking help.  While accepting now as true that police were promptly told that the dispatch call and the street-side intervention both involved the same event,[110] there is nothing in the record that contradicts the trial testimony of both officers[111] that immediately before the arrest they were attempting to confer with each

---

[109] ECF # 17, Attachment 5.

[110] *See*, ECF # 19 at 23.

[111] Olaes did not testify at the trial and filed no affidavit opposing the motion for partial summary judgment.  As noted, his deposition testimony is part of the record.

other and listen to the police radio when Olaes came up near the open window of the patrol

car and tried to get them to leave their vehicle immediately.[112]

Specifically, even accepting as true Olaes' deposition testimony[113] that he did not raise

his voice nor use profanity in urging the officers to leave their car and investigate,[114] Olaes'

testimony does not contradict the testimony of the officers that, at the time of the arrest, they

were trying to confer among themselves and listen to the police radio concerning the 911 call

to which they were responding while Olaes was insisting through an open window that they

"do their job" and leave their car.

It is important to observe that my recommended finding of probable cause to arrest

Olaes for obstructing official business is in no way founded on Olaes merely expressing

disagreement with the officers' action or inaction, even in loud or profane speech.[115]  It is

well-settled that merely expressing disagreement toward police does not, of itself, justify

arrest for interference with an officer's duties, but is accorded First Amendment protection.[116]

---

[112] *See*, ECF # 16 at 25 (Guerra testimony) ("We were trying to listen to the radio as
he's yelling into the car window."); at 26 ("... we are trying to talk to each other and [the]
radio [dispatcher] while [Olaes] continued yelling at us basically."); at 90 (Petranek
testimony) ("[W]e want to listen to the [police] radio because we are still confused about
what's going on, this seem[s] to us that it might be the same incident [but] we're not sure.").

[113] ECF # 18 at 52-53.

[114] By contrast, both officers testified  that Olaes was "yelling into the car window ...
swearing at us," (ECF # 16 at 25, Guerra); and "taunting [the officers], yelling ..." (ECF # 19,
Ex. 2, Petranek field report).

[115] As noted, Olaes has denied using loud or profane speech, and the evidence here
must be evaluated in the light most favorable to him.

[116] *See*, *Barnes v. Wright*, 449 F.3d 709, 718 (6th Cir. 2006).

-24-

Rather, the foundation of my recommended finding is the undisputed evidence that Olaes was pressing his point while the officers were attempting, under the pressure of needing to respond quickly to a high-priority 911 call,[117] to clarify the facts of the situation they were facing by listening to the police radio and conferring among themselves.  This action by Olaes could be seen by a reasonable officers on the scene at that time as interfering with the performance of their duties as regards formulating a timely and accurate response to a high-priority 911 call and thus providing probable cause arresting him for obstructing official business.

It is also critical to emphasize that there is no issue of material fact as to what the officers were doing when Olaes approached the window of the police car.  While Olaes argues at some length that there would have been no logical reason for the officers to be listening to the radio dispatcher when he approached, thus seeking to imply that the officers' account is improbable and should not be credited,[118] the fact is that Olaes has offered no

_____

[117] ECF # 17 at 3, noting that the call was "code two," which requires a prompt response.

[118] Olaes' argument rests on assertions that:  (1) there was no reason for the officers to be listening to a dispatcher since they knew the facts already; (2) it is inconsistent for them to say they were paying attention to police radio immediately after the officers requested that Concepcion get off his cell phone to speak with them; and (3) the field reports do not mention the officers listening to the dispatch radio.

Rule 56 evidence that would create a jury issue as to what the officers actually were doing at this juncture.[119]

In fact, as noted, the only direct evidence in this record as to what the officers were doing at this moment is from the officers themselves. As stated, their uncontroverted testimony is that they were attempting to listen to the police dispatcher when Olaes appeared at their car window and so interfered with that activity. As such, this testimony is the only evidence properly before the Court on this motion for summary judgment, and so necessarily forms the basis for the analysis here.

In this regard, my recommendation in this case rests on the analysis of Ohio's construction of obstruction of official business statutes contained in the Sixth Circuit opinion in *Lyons v. City of Xenia*.[120] *Lyons* noted first that, to violate the obstruction of official business statute, Ohio requires the performance of an affirmative act that interrupts police business.[121] In other words, the offense is not committed by inaction, such as refusing to provide identification to police.[122] However, as *Lyons* also notes, "speech that obstructs

---

[119] While Olaes is clearly entitled to have all favorable inferences drawn from facts established, it is also clear that once the City has met its burden of establishing a fact necessary to its case by proper evidence, Olaes must then counter that showing by more than arguing why a jury should disbelieve the City, but must instead "make an affirmative showing with proper evidence to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citation omitted).

[120] *Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005).

[121] *Id*. at 573-74 (citation omitted).

[122] *Id*. at 574 (citation omitted).

officers from fulfilling their duties may amount to a sufficient affirmative act to sustain a charge of obstructing official business."[123]

As such, because this case is analogous to that in *Lyons*, I recommend finding that Olaes' conduct at the time, even when viewed in a light most favorable to him and in the totality of the circumstances, provides objective evidence from which a reasonable officer could conclude that the offense of obstructing official business was being committed and so provides probable cause for the arrest. Thus, I recommend granting summary judgment to Petranek and Guerra on count one, the federal claim alleging a lack of probable cause for the arrest.  As noted above, the adoption of this recommended finding would then require entry of summary judgment in favor of Petranek and Guerra on counts seven and nine of the complaint, the claims asserted therein each having as an essential element the lack of probable cause.[124]

## 4.    *Failure to train*

a.    *Standard of review*

In general, it is well-settled in a § 1983 action that a municipality may not be held liable under the theory of respondeat superior for the actions of its employees.[125]  Rather, a plaintiff seeking to establish municipal liability under § 1983 must ground the liability in

---

[123] *Id.* (citation omitted).

[124] *Radvansky*, 395 F.3d at 315; *Hays v. Bolton*, No. 1:09cv2840, 2011 WL 53099, at *6 (N.D. Ohio Jan. 7, 2011).

[125] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978).

"conduct properly attributable to the municipality itself."[126] Specifically, in order for liability to attach, a § 1983 plaintiff must show that a municipality engaged in a "'policy or custom'" that was "'the moving force'" behind the deprivation of the plaintiff's rights.[127]  In that regard, a municipal "policy" is an officially adopted and promulgated statement, ordinance, regulation, or decision, where, by contrast, a municipal "custom" has not received formal approval through official channels but exists where officials know about and acquiesce in the practice at issue.[128]

> Where the claim involves a municipal "custom," the plaintiff must prove:
>
> (1) the existence of a clear and persistent pattern of violating federal rights ...; (2) notice or constructive notice on the part of defendants; (3) the defendants' tacit approval of the unconstitutional conduct, such that their deliberate indifference in failing to act can be said to amount to an official policy of inaction; and (4) that the defendants' custom was the "moving force," or direct causal link for the constitutional deprivation.[129]

To that end, the Sixth Circuit in *Fisher v. Harden*[130] (construing the Supreme Court's holding in *City of Canton v. Harris*)[131] held that a plaintiff in a § 1983 action may hold a municipality liable for the unconstitutional acts of its police officers upon successfully

---

[126] *Bryan County v. Brown*, 520 U.S. 397, 404 (1997).

[127] *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 694).

[128] *Powers*, 501 F.3d at 607 (citations omitted).

[129] *Id.* (citations omitted).

[130] *Fisher v. Harden*, 398 F.3d 837 (6th Cir. 2005).

[131] *City of Canton v. Harris*, 489 U.S. 378 (1989).

showing that the municipality maintained the custom of improperly training its police force. To prevail on such a claim of improper training in light of the larger rubric of establishing an unconstitutional municipal custom, the plaintiff "must prove that the [municipality] was deliberately indifferent to the rights of its citizens that came into contact with [the police]"[132] by "show[ing] prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored prior instances of abuse and was clearly on notice that the training in this area was deficient and likely to cause injury."[133]

In that regard, as the Supreme Court specifically observed in *City of Canton v. Harris*, it is not enough that a plaintiff in this circumstance show that an individual officer was improperly trained, or that the particular injury or accident at issue might have been avoided with better training.[134]  The Court noted proof in that form is insufficient for liability because a particular officer's deficient training may be the result of an adequate program being poorly administered, and that even adequately trained officers make mistakes; "the fact that they do says little about the training program or the legal basis for holding the city liable."[135]

---

[132] *Fisher*, 398 F.3d at 849 (citing *City of Canton*, 489 U.S. at 392).

[133] *Id.*

[134] *City of Canton*, 489 U.S. at 390-91.

[135] *Id.*

-29-

b.      *The City of Cleveland is entitled to summary judgment on the claim in count four that it failed to provide adequate police training.*

Here, Olaes argues that in nine separate areas the training provided police by the City of Cleveland is deficient in how it deals with suburbanites, Chinese, or Eastern races and in the use of non-physical techniques for use of force.[136]  Olaes asserts that these deficiencies are "so obvious and prevalent that the matter [of whether they constitute a constitutional violation] should be decided by a jury, and not by this Court in a summary judgment action."[137]

This assessment by Olaes as to what is necessary from a plaintiff to bring a deliberate indifference claim to a jury is inapposite to the standard related above.  In fact, as the Supreme Court and Sixth Circuit clearly teach, a failure to train claim resting upon maintaining an allegedly improper municipal custom will fail as a matter of law where (1) the plaintiff cannot show that the municipality has ignored prior instances of abuse that would put it on notice that failure to train in a specific area was deficient and that the identified deficiency was, if not corrected, likely to cause injury; or (2)  that the city's failure to take corrective actions identified by the plaintiff was deliberate.[138]

Here, Olaes has offered no evidence in the Rule 56 record to support a finding that: (1) there was the "existence of a clear and persistent pattern" of violations of federal rights,

---

[136] ECF # 19 at 16-17.

[137] *Id.* at 19.

[138] *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (citation omitted); *Fisher*, 398 F.3d at 849.

(2) from which Cleveland received actual or constructive notice, (3) of deficiencies in its training, (4) in the areas specified by Olaes. Further, Olaes has produced no evidence from which a jury could find that Cleveland's failure to take the meliorative actions he identifies was deliberate. Without such evidence at this stage, Olaes cannot create a genuine issue of material fact as to whether Cleveland was deliberately indifferent to the rights of its citizens by training its police as it did. And without a genuine issue of material fact as to deliberate indifference, it is proper to grant Cleveland summary judgment on count four.[139]

Accordingly, I recommend that Cleveland's motion for summary judgment in its favor as to count four be granted.

## 5. *Malicious prosecution*

The Sixth Circuit has held that "malicious prosecution claims can be brought under either federal or state law."[140] In that regard, it stated:

> In order to prove malicious prosecution under federal law, a plaintiff must show, at a minimum, that there is no probable cause to justify an arrest or a prosecution. Under Ohio law, the elements of malicious prosecution are: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused."[141]

---

[139] *Beckett v. Ford*, 384 F. App'x 435, 454 (6th Cir. June 24, 2010). Where a § 1983 plaintiff provided insufficient evidence that "the city was on notice that there had been similar problems in the past," the plaintiff "simply cannot create a genuine issue of material fact" as to whether a failure to train has produced a constitutional wrong, thus summary judgment for defendant is proper.

[140] *Voyticky v. Village of Timberlake*, 412 F.3d 669, 675 (6th Cir. 2005).

[141] *Id.* (citation omitted).

In addition, in *Kinkus v. City of Yorkville* the Sixth Circuit has also held that "a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, so long as the information he submitted to the prosecutor is truthful."[142]  Further, in *Wysong v. City of Heath* the Sixth Circuit has also stated that where a plaintiff has not raised a triable question of fact as to whether officers withheld information from or provided false information to the prosecutor, the officers will be entitled to summary judgment on the basis of Ohio statutory immunity as to any state claim of malicious prosecution.[143]

Here, there is no dispute that the decision to prosecute was made by the Cleveland prosecutor, not the officers.  Instead, Olaes argues that Petranek and Guerra should not be granted summary judgment on the issue of malicious prosecution because there is a dispute as to whether the officers provided false information to the prosecution designed to induce a criminal prosecution.[144]  Specifically, he contends the officers' reports contained "false

---

[142] *Kinkus v. Village of Yorkville*, 289 F. App'x 86, 90 (6th Cir. 2008) (citing *Skousen v. Brighton High School*, 305 F.3d 520, 529 (6th Cir. 2002); *see also*, *McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005).

[143] *Wysong v. City of Heath*, 377 F. App'x 466, 471-72 (6th Cir. 2010).

[144] ECF # 19 at 32-33.

statements" that Olaes was unruly, when he was actually calm.[145]  He further asserts that the officers' reports omitted information showing the arrest was "based on revenge."[146]

In support of their motion, the defendants offer the affidavits of assistant prosecutor Gina Villa[147] and chief assistant prosecutor Victor Perez.[148]  By her declaration, Villa testifies that she was the assistant prosecutor responsible for reviewing the file before deciding to recommend pursuing charges against Olaes.[149]  In that review, Villa states that in addition to the report filed by Petranek she also reviewed four witness statements provided by Olaes' defense attorney.[150]  Only after that review did she make the determination to proceed with prosecution.[151]  Moreover, the Perez declaration states that prosecution against Olaes would not have gone forward unless Villa had determined that charges were supported by probable cause.[152]

---

[145] *Id.*

[146] *Id.*  I note that Olaes has not raised a claim here of First Amendment retaliation, but he has argued the malicious prosecution claim as if it were such a claim, thus presumably entitling him to have the claim considered in that light.  *See*, *Briner v. City of Ontario*, 370 F. App'x 682, 704 (6th Cir. 2010).  Because I need not reach that issue for purposes of resolving the motion for summary judgment as regards this claim, I make no recommendation in that regard.

[147] ECF # 17, Attachment (Villa declaration).

[148] ECF # 17, Attachment (Perez declaration).

[149] ECF # 17, Attachment (Villa declaration) at ¶ 3.

[150] *Id.*

[151] *Id.* at ¶ 4.

[152] ECF # 17, Attachment (Perez declaration) at ¶¶ 2, 3.

Accordingly, based on this uncontroverted evidence, as the Sixth Circuit observed in *Radvansky v. City of Olmsted Falls*, the officers' liability for malicious prosecution of Olaes turns on what information the prosecutors had prior to deciding to initiate prosecution.[153] Moreover, even if, as Olaes alleges, the prosecutor was not given complete information as to the circumstances of his arrest, liability for malicious prosecution will not lie against Petranek and Guerra unless they were responsible for any misconceptions relied on by the prosecution in the decision to proceed with prosecution.[154]

Here, I note first that the undisputed evidence is that the prosecutor explicitly considered statements from numerous defense witnesses, as well as the police field report, as part of the review conducted prior to initiating prosecution.  Further, I also note that the incident file reviewed by the prosecutor also contained a report prepared by the police investigator, which states that Olaes refused to speak with the investigator at the scene citing his request for an attorney.[155]

From this, it is plain, even viewing the evidence most favorably to Olaes, that the officers did not prevent the prosecutor from reviewing other evidence prior to ultimately making the decision to prosecute, even evidence supplied by the defense.  In addition, while Olaes had every right to refuse to speak with the police investigator without an attorney

---

[153] *Radvansky*, 395 F.3d at 317.

[154] *See*, *id.*  "Regardless of whether [the prosecutor] was given complete information of the events surrounding [the plaintiff's] arrest, none of [the defendants] were responsible for [the prosecutor's] misconceptions."

[155] ECF # 19, Attachment (Kane).

present, his silence left any purported factual errors in Petranek's field report uncontested in the file and forced the reviewing prosecutor to undertake the file examination without the benefit of Olaes' version of events in the record.

Accordingly, I recommend that Petranek and Guerra be granted summary judgment on both the federal (three) and state (ten) counts of malicious prosecution.[156]

### 6.    *Damages*

Defendants contend that they are entitled to summary judgment as to any claimed damages in the form of lost income from an unconsummated business transaction that Olaes asserts was caused by post-traumatic stress produced by the actions of the officers.[157]  The defendants argue that the damages here are too remote and speculative to be permitted.[158] Olaes, in response, maintains that the lost deal was an actual business opportunity and that a jury should be allowed to determine whether it was genuine or not.[159]

---

[156] Counts three and ten of the amended complaint.

[157] ECF # 17 at 19-20.

[158] *Id.*

[159] ECF # 19 at 37-38.

The rule in Ohio[160] is clear that "proof of damages must be shown with a reasonable degree of certainty; speculative damages are not recoverable."[161]  Specifically, as the Sixth Circuit noted in *In re Smartalk Teleservices, Inc. Securities Litigation*, this rule precludes recovery "where the fact of damage is uncertain, *i.e.*, where the damage claimed is not the certain result of the wrong, not where the amount of the damage alone is uncertain."[162]

In this case, Olaes contends that he had been working to form relationships in China "so as to have an opportunity for business investments with the China Social Security Fund and the China Investment Corporation."[163]  He does not point to any specific investment that was allegedly lost as a consequence of the events at issue in this case but, rather, asserts that "the incident involving Guerra and Petranek took away his opportunity to do his best in making presentations" to these entities that may have resulted in being invited to do business with them.[164]

---

[160] Ohio law provides the rule for damages for federal claims in a § 1983 action.  *See*, 42 U.S.C. § 1988; *Tinch v. City of Dayton*, 77 F.3d 483 (6th Cir. 1996).  Of course, the Ohio law on damages applies to causes of action arising under Ohio law.

[161] *In re Smartalk Teleservices, Inc. Securities Litigation*, 487 F. Supp. 2d 940, 943 (S.D. Ohio, 2007) (citing *Bobb Forest Prods. v. Morback Induss.*, 151 Ohio App. 3d 63, 783 N.E.2d 560 (Ohio Ct. App. 2002).

[162] *Grantham and Mann, Inc. v. American Safety Prods., Inc*., 831 F.2d 596, 601-02 (6th Cir. 1987).

[163] ECF # 19 at 36.

[164] *Id*. at 36-37.

I recommend finding that Olaes' damage claim here does not rest on any provable "fact of damage" arising as a "certain result"[165] of any action by the defendants where the amount may yet be uncertain but rather represents impermissible speculation as to what may have been a possible result from developmental meetings with potential business associates. As such, I further recommend finding that it would be improper under Ohio law to allow a jury to assign an amount in damages to non-existent business deals that Olaes may or may not have been invited to enter.  As the court succinctly noted in *Peltier v. McCartan*,[166] it is impermissible for a jury to "speculate as to what might have been."[167]

Accordingly, because Olaes must present some evidence of having suffered actual damage to survive a motion for summary judgment, and because this claim relating to potential business dealings in China does not relate to any "fact of damage" arising as a "certain result" of anything allegedly done by the defendants, I recommend granting the defendants' motion for summary judgment in this regard and denying Olaes' claim for damages for lost business opportunities.

## Conclusion

For the foregoing reasons, I recommend granting defendant City of Cleveland's motion for partial summary judgment as to count four of the complaint and defendants

---

[165] *Grantham and Mann*, 831 F.2d at 601-02.

[166] *Peltier v. McCartan*, 2005 WL 1798543 (Ohio Ct. App. Aug. 1, 2005).

[167] *Id.*, at *3.

Petranek's and Guerra's motion for partial summary judgment as to counts one, three, seven, nine, and ten of the complaint.

Dated:   February 4, 2011                     s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[168]

---

[168] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).